IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

**KAREEM CORDELL DEBOSE,**

    **Plaintiff,**

v.                                        Case No. 1:22-cv-209-AW-MAF

**WILLIAM PATTEN, SARAH**
**WILCHER, and JEFF FRICKER,**

    **Defendants.**

_____/

## FINAL ORDER

Kareem Cordell Debose—the pro se prisoner Plaintiff—sued three law enforcement officers. Debose alleges the officers violated his Fourth, Fifth, and Fourteenth Amendment rights when they detained, questioned, and arrested him. The operative complaint is the Third Amended. ECF No. 20 (3AC).

Defendants moved for summary judgment, and the magistrate judge issued a report and recommendation concluding I should grant their motion. ECF No. 65. Having carefully considered the matter de novo, including all issues raised in Debose's objections (ECF No. 68), and having carefully considered the cited

1

portions of the summary-judgment record,[1] I agree Defendants are entitled to summary judgment.[2]

## I.

A court should grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the outcome. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). At this stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Thus, the facts for summary-judgment purposes may not be the real facts. What follows are the facts for summary-judgment purposes.

---

[1] Parties must cite "particular parts of materials in the record" to support factual assertions. Fed. R. Civ. P. 56(c)(1)(A). And "[t]he court need consider only the cited materials." *Id.* 56(c)(3). In my discretion, I have declined to consider materials not pinpoint cited in the parties' papers or addressed in this order. *See* N.D. Fla. Loc. R. 56.1(F).

[2] To the extent Debose offers new exhibits with his objection, I will not consider them. *See Lodge v. Kondaur Capital Corp*., 750 F.3d 1263, 1274 (11th Cir. 2014). But the only new exhibit appears to be the deposition of Deputy Bugg, ECF No. 68-9, which would not change anything even if I considered it. Also, Debose also filed an unauthorized surreply. ECF No. 64. Because it was not authorized, I will not consider it. *See* N.D. Fla. Loc. R. 56.1. But it would not have changed the analysis anyway.

Debose was incarcerated in Colorado for two years for sexually assaulting a minor. ECF No. 58-14. He then returned to Gainesville, where he remained on supervision pursuant to an interstate compact. ECF No. 58-1 at 13-14. Meanwhile, a distraught father found messages on his minor daughter's phone suggesting she was having sex with adult men. ECF No. 58-18 ¶ 3-4. With the father's consent, Detective Patten of the Alachua County Sheriff's Office extracted the phone's data. *Id*. Detective Patten found sexually explicit texts between the daughter and a particular phone number, and he ran that number through the Sheriff's Office "Master Name Index," a database that stores names, addresses, phone numbers, and other information the Sheriff's Office collects from police reports, field contacts, citations, and other sources. *Id.* ¶ 5; ECF No. 58-5 at 5. That search turned up a match with a number from a recent field contact with Debose. ECF No. 58-18 ¶ 5.

Detective Patten then asked Deputy Wilcher to bring Debose in for questioning. *Id.* ¶ 8. Deputy Wilcher and Deputy Fricker drove to Debose's apartment and asked him to come to the Sheriff's Office. ECF No. 58-19 ¶ 4. Debose went inside to gather some belongings. ECF No. 58-1 at 29-30. When he returned, the deputies asked to perform a pat down to check for weapons, *id.* at 30, and Debose obliged, ECF No. 62 at 5. The deputies then transported Debose to the Sheriff's Office, ECF No. 58-19 ¶ 6, where Detective Patten told Debose that he was being detained, ECF No. 58-18 ¶ 9. Shortly thereafter, Detective Patten arrested Debose

3

and read him a *Miranda* warning. ECF No. 58-1 at 34. Debose requested an attorney, but Detective Patten continued to ask questions. *Id*.

Debose was charged with sexual battery on a minor, traveling to meet a minor after using a computer, using a two-way communication device to lure a minor, and failure to update sex-offender records. ECF No. 58-18 ¶ 12. Debose pleaded no contest to failing to register as a sex offender, but on some of the other charges the state either took no action or filed a Nolle Prosequi. ECF Nos. 58-9, 58-12.[3]

Debose brought what he styled as 14 different § 1983 claims against the three officers—Patten, Wilcher, and Fricker. 3AC at 9. Defendants are entitled to summary judgment on all claims.

## II.

### A.

Debose's first set of claims relate to his initial encounter with Deputies Wilcher and Fricker at his apartment. 3AC at 9 ("4th & 14th Amendment Illegal patdown/Frisk, unreasonable seizure, False arrest, False Imprisonment"). In addition to the fact that the deputies would have had probable cause to arrest him at the time (more on that below), these claims fail because Debose voluntarily complied with the deputies' requests.

---

[3] Debose was separately convicted of sexual battery and misusing a two-way device in a separate case involving a different minor. He is serving a 20-year total sentence for those offenses. *See* ECF No. 58-13.

Deputies Wilcher and Fricker went to Debose's apartment and told him someone at the Sheriff's Office wanted to speak with him. ECF No. 58-1 at 27. The deputies never said Debose was under arrest. *Id.* at 29. The deputies then allowed him to go inside his home to gather some belongings. *Id.* at 30. Debose acknowledges he obliged the pat down, ECF No. 62 at 5, and that it was a reasonable measure to ensure he was taking no weapons into the Sheriff's Office. ECF No. 58-1 at 30.

A pat down is voluntary "if it is the product of an essentially free and unconstrained choice." *United States v. Spivey*, 861 F.3d 1207, 1213 (11th Cir. 2017) (cleaned up). This is determined case-by-case under a totality-of-the-circumstances test. *Id.*

> Relevant factors include [1] the "voluntariness of the defendant's custodial status, [2] the presence of coercive police procedure, [3] the extent and level of the defendant's cooperation with police, [4] the defendant's awareness of his right to refuse consent to the search, [5] the defendant's education and intelligence, and, significantly, [6] the defendant's belief that no incriminating evidence will be found."

*Id.* (quoting *United States v. Chemaly*, 741 F.2d 1346, 1352 (11th Cir. 1984)).

Here, Debose points to nothing suggesting the pat down was involuntary, apart from his assertion that he subjectively did not know he could refuse. *See* ECF No. 20 at 5. Debose has taken inconsistent positions about whether and when he was

handcuffed.[4] But the use of handcuffs and the presence of armed officers is not, without more, enough to make a search involuntary. *See United States v. Garcia*, 890 F.2d 355, 360-61 (11th Cir. 1989). Ultimately, because Debose admitted he obliged the request, ECF No. 62 at 5, was not told he was under arrest, ECF No. 58-1 at 29, and was allowed to freely re-enter his home to gather belongings, *id.* at 29-30, there is no material dispute of fact over whether the pat down was voluntary.

Debose also admits he went to the station willingly. *Id.* at 29. Debose now says he was merely "acquiescing to [the deputies'] authority." ECF No. 68 at 3. And it is true that "courts must not 'misinterpret acquiescence to an officer's demands as consent.'" *Gill ex rel. K.C.R. v. Judd*, 941 F.3d 504, 524 (11th Cir. 2019) (quoting *United States v. Berry*, 670 F.2d 583, 596 (5th Cir. Unit B 1982) (en banc)). But Debose points to no facts suggesting coercion. By his own telling, he went with them willingly. ECF No. 58-1 at 29.

## B.

Debose's next claim relates to Detective Patten's questioning. 3AC at 9 ("5th and 14th Amendment Unlawful interrogation, violation of Miranda (right to counsel)"). After Debose arrived in the interrogation room, Detective Patten arrested

---

[4] His complaint suggests he was handcuffed during the search. ECF No. 20 at 5. In his summary-judgment response, Debose included handwritten annotations on Deputy Wilcher's deposition that say, among other things, "yes That's true, I was never under arrest at all" and "I was never cuffed not once!" ECF No. 60 at 28-29. His response seems to suggest he was handcuffed after the pat down.

him and read him a *Miranda* warning. ECF No. 58-1 at 33-34. Debose then announced he wanted a lawyer, yet Detective Patten continued speaking with him. Debose says Detective Patten continued to interrogate, *id.*, but Detective Patten says he was merely explaining the charges Debose faced. ECF No. 58-18 ¶ 10. At this stage, I will accept Debose's version. Still, Detective Patten is entitled to summary judgment because a *Miranda* violation does not provide a basis for a § 1983 claim. *Vega v. Tekoh*, 597 U.S. 134, 151 (2022) (explaining that *Miranda*'s "prophylactic purpose is served by the suppression at trial of statements obtained in violation of *Miranda* and by the application of that decision in other recognized contexts" and that "[a]llowing the victim of a *Miranda* violation to sue a police officer for damages under § 1983 would have little additional deterrent value").

### C.

Next, Debose presents claims stemming from his detention and arrest at the Sheriff's Office. 3AC at 9 ("4th and 14th Amendment Unlawful seizure, illegally detained, False arrest, False Imprisonment"). Debose cannot succeed on such a claim unless he shows an absence of probable cause. *Gill*, 941 F.3d at 522-23. "Probable cause 'exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'" *Id.* at 516 (quoting *Marx v. Gumbinner*, 905 F.2d 1503, 1506

(11th Cir. 1990)). Importantly, the any-crime rule "insulates officers from false-arrest claims so long as probable cause existed to arrest the suspect for *some* crime, even if it was not the crime the officer thought or said had occurred." *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020). "The existence of probable cause is an absolute bar to a § 1983 claim of false arrest." *Davis v. City of Apopka*, 78 F.4th 1326, 1333 (11th Cir. 2023).

The claims first fail because Debose was adjudicated guilty on the failure-to-register charge. "[A] judgment of conviction is a sufficient legal determination of the existence of probable cause unless it be shown that the judgment was obtained by fraud, perjury, or other corrupt means." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1319 (11th Cir. 2017) (cleaned up) (quoting *Goldstein v. Sabella*, 88 So. 2d 910, 911-12 (Fla. 1956)). Debose presents no facts suggesting his conviction was obtained by fraud or other illicit means.

Second, even if Debose could challenge his conviction, the officers had probable cause to arrest for several offenses, the most straightforward of which is failure to register. Florida law requires sex offenders to register identifying information. Fla. Stat. § 943.0435 (2018). That includes updating "all home telephone numbers and cellular telephone numbers" every six months. *Id.* § 943.0435(14)(c)1. Providing false registration information, "by act or omission," is a felony. *Id.* § 943.0435(14)(c)4. Debose completed his scheduled reregistration

8

on August 21, 2018, listing only (352) 215-1273. ECF No. 58-17 at 9-11. Detective Patten learned from office records—the Master Name Index—that Debose was using another phone number: (352) 283-0287. The number appeared in the Master Name Index based on an April 2018 routine field contact with Debose. ECF No. 58-18 ¶ 5. In addition, the Sheriff's Office learned about Debose's (352) 283-0287 number in 2017 from his girlfriend as part of an investigation into an incident in which he was the alleged victim. *See* ECF No. 58-6 at 1. Because that number was used in an incident report, that would cause it to show up in the Master Name Index as associated with Debose. *See* ECF No. 58-5 at 5.

That is also the number associated with the minor's sexually explicit conversations, which indicated the minor and the user of that number were engaging in sexual conduct. ECF No. 58-18 ¶ 4. Officers had all this information before they went to Debose's apartment and before the arrest. So there was already probable cause to arrest Debose for—at the least—failing to register his number. Debose argues Detective Patten did not "know who that number belonged to at the time of arrest" because the minor's phone listed the contact as "King D." ECF No. 68 at 7. But it is not the content on the phone alone that provided the basis for probable cause.

Debose also insists he never gave his phone number during the field contact check and that if he had, there would have been a tracking form to that effect. *Id.* This argument fails for two reasons. First, there is a tracking form. ECF No. 58-8.

9

An April 21, 2018 sex-offender-check form says Deputy Reibsome conducted a sex-offender check, and it lists (352) 283-0287 as Debose's phone number. *Id.* Second, there is no dispute of material fact about the information Detective Patten had at the time. The only evidence on this matter comes from Detective Patten's sworn statement. *See* ECF No. 58-18 ¶¶ 4-7. Debose's arguments at best challenge the way the number was added to the Master Name Index. But the only available evidence suggests that, however it ended up there, Detective Patten had it and relied on it.

Much of Debose's summary-judgment response and his objections to the report and recommendation center around the idea that information obtained after his arrest cannot be part of the initial probable cause determination. And indeed, Detective Patten cannot rely on the fact that the victim later identified Debose as someone she had sex with, or that Debose admitted the (352) 283-0287 number was his (which Sprint also confirmed), or that he admitted he used social media to have explicit conversations with the victim (who told him she was 16), or that he admitted he met the victim in person. *See* ECF No. 58-3 at 1; ECF No. 58-15; ECF No. 58-1 at 38-40; ECF No. 58-2 at 5-8. But even without any of this, there was probable cause at the time of arrest. Detective Patten is entitled to summary judgment on these claims.

**D.**

Debose presented some other claims against Detective Patten. 3AC at 9 ("4th & 14th Amendment . . . malicious prosecution, deprivation of liberty without due process of law, Abuse of process and pain and suffering). Detective Patten is entitled to summary judgment on all of them.

The torts of abuse of process and malicious prosecution both require a defendants' use of formal legal process. To succeed on abuse of process, a plaintiff must show the challenged activity stemmed from some "lawfully initiated process." *Heck v. Humphrey*, 512 U.S. 477, 486 n.5 (1994). To succeed in a malicious-prosecution claim, a plaintiff must show "that the legal process justifying his seizure was invalid." *Williams*, 965 F.3d at 1164. "A Fourth Amendment violation involving these seizures occurs when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements." *Id.* at 1158 (cleaned up). But the complaint does not speak of, and Debose points to no record evidence identifying, any legal process that Detective Patten or anyone else initiated.

Debose objects that if the court determined there was no probable cause to arrest him, then he should be able to continue with his claims for abuse of process and malicious prosecution. ECF No. 68 at 9-10. But the only conduct Debose seems to challenge is his warrantless arrest. *See* ECF No. 20 at 7-8. And a warrantless arrest

cannot be the basis for abuse of process or malicious prosecution. *See* Restatement (Third) of Torts: Liab. for Econ. Harm § 26 cmt. b (2020) (noting the word process "does not refer to the legal process generally" but instead "the instruments by which courts assert their jurisdiction"); *id.* § 21 cmt. b (requiring the initiation of a criminal proceeding as an element of malicious prosecution and noting criminal proceedings "are begun by the official action of a tribunal or official, namely, the issuance of some form of process that summons the accused party to court").

In his summary-judgment response, Debose seems to imply the abuse of process might stem from Deputy Reibsome's address verification. Putting aside the fact that Debose cannot raise a new claim in his response, he still does not identify any lawfully initiated process as the source of the claim. Because Debose cannot establish this essential element, Detective Patten is entitled to summary judgment.

Debose's claim for deprivation of liberty without due process of law is similarly incomplete. And it is unclear from the complaint—or any other paper—what action Debose challenges here. If it relates to his arrest, the claim fails for the same reasons the false-arrest claim fails. If it relates to his later incarceration, it fails for the same reason the abuse-of-process and malicious-prosecution claims fail. Regardless, Detective Patten is entitled to summary judgment here.[5]

---

[5] Debose also listed "pain and suffering" as a claim, but that is an element of damages, not an independent claim.

Debose also seemed to base some of his objections on state law. *See* ECF No. 68 at 9-10. But the operative complaint based all counts on federal law. ECF No. 20 at 9. A plaintiff cannot amend his complaint in a response opposing summary judgment. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). Debose has not pleaded any state-law claim.

## III.

As an independent basis to grant summary judgment, I conclude Defendants are entitled to qualified immunity on all claims. Qualified immunity "protects an officer unless at the time of the officer's supposedly wrongful act the law was already established to such a high degree that every objectively reasonable officer in his place would be on notice that what he was doing was clearly unlawful given the circumstances." *Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022) (cleaned up). Because there is no dispute that the three were acting within their discretionary authority, *see* ECF No. 62 at 8, Debose had to show not only that his rights were violated but also that those rights were clearly established. *Powell*, 25 F.4th at 920. There are three ways he could do so:

> (1) by pointing to a materially similar decision of the Supreme Court, or [the Eleventh Circuit], or of the supreme court of the state in which the case arose; (2) by establishing that a broader, clearly established principle should control the novel facts of the case; or (3) by convincing us that the case is one of those rare ones that fits within the exception of conduct which so obviously violates the constitution that prior case law is unnecessary.

13

*Id.* (cleaned up).

Here, Debose has not identified such a case, principle, or exception. That is enough for me to conclude Defendants are entitled to qualified immunity.

Further, the claims relating to Debose's transport to and eventual arrest at the Sheriff's office all failed in part because there was probable cause to arrest Debose. But to be entitled to qualified immunity in this context, "an officer need not have actual probable cause, but only arguable probable cause." *Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023) (cleaned up). Thus, a court asks "whether 'a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests." *Id.* at 1187 (quoting *D.C. v. Wesby*, 583 U.S. 48, 68 (2018)). Debose has not shown that any of his arguments pass muster under this higher standard either.

\* \* \*

The motion for summary judgment (ECF No. 58) is GRANTED. The report and recommendation is approved to the extent it is consistent with this order. The clerk will enter judgment stating, "This case was resolved at the summary-judgment stage. Plaintiff's claims are dismissed on the merits, and Plaintiff shall recover nothing." The clerk will then close the file.

SO ORDERED on March 17, 2025.

                                          s/ *Allen Winsor*
                                          United States District Judge